**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FOUR MILLION, NINE HUNDRED THIRTY-NINE THOUSAND, FIVE HUNDRED THIRTY-SEVEN DOLLARS AND SIX CENTS ($4,939,537.06) FROM MID PENN BANK ACCT. ENDING IN 5715;<br><br>Defendant. | ) | No. |

**VERIFIED COMPLAINT OF FORFEITURE**

COMES NOW, Plaintiff, the United States of America, by and through its attorneys, Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Ricardo Dixon, Assistant United States Attorney for said District, and for its Verified Complaint for Forfeiture states as follows:

**NATURE OF THE ACTION**

1. This is a civil action *in rem* brought by the United States of America seeking forfeiture of all right, title, and interest in the above-captioned defendant property pursuant Title 18, United States Code, Sections 981(a)(1)(A) and (C).

2. The defendant property was seized by law enforcement on or about November 13, 2025, and is described more fully as $4,939,537.06 from Mid Penn Bank account ending in 5715 ("the Subject Account").

3. The Subject Account was in the name of Delta Telecom International PTE LTD LLC incorporated in the State of Delaware as an LLC ("the Subject LLC"). Funds remitted from the Subject Account went to another LLC, Delta Telecom International I LLC incorporated in

Missouri ("DTII"). Concurrent with the filing of this Complaint, the Subject LLC and the United States have agreed to resolve this matter pursuant to a Settlement Agreement.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345, 1355, and 1395.

5. Venue is proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts and omissions giving rise to forfeiture took place in the Eastern District of Missouri. Venue is also proper pursuant to Title 28, United States Code, Section 1395(b) because the Subject Bank Account was seized in the Eastern District of Missouri.

**STATUTORY FRAMEWORK**

6. Title 18, United States Code, Section 1960 criminalizes knowingly conducting, controlling, managing, supervising, directing or owning all or part of an unlicensed money transmitting business. Title 18, United States Code, Section 1960 provides that whoever conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business commits a federal crime. Section 1960 defines an "unlicensed money transmitting business" as one "which affects interstate or foreign commerce in any manner or degree and

a. is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

b. fails to comply with the money transmitting business registration requirements under section 5330 of title 31; or

c. otherwise involves the transportation or transmission of funds that are known

to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity."

7. Section 1960 further defines "money transmitting" to include the transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier.

8. The majority of States require money transmitting businesses to obtain a license and comply with other regulatory requirements that apply to such licensed entities, and punish the unlicensed operation of a money transmitting business as a misdemeanor or felony. For example, the State of Missouri requires money transmitters to register with the State. The Sale of Checks Law, Mo. Rev. Stat.§ 361.700 *et seq.* requires that any person within the State of Missouri issuing checks for consideration must obtain a license from the Director of Finance. Mo. Rev. Stat. § 361.705. Section 361.700(2) defines "check" to include "any electronic means of transmitting or paying money." Before a license can be issued to an applicant, the director must "investigate and determine whether the character, responsibility, and general fitness of the principals of the applicant or any affiliates are such as to command confidence and warrant belief that the business of the applicant will be conducted honestly and efficiently and that the applicant is in compliance with all other applicable state and federal laws." Mo. Rev. Stat. § 361.715.

9. Title 31, United States Code, Section 5330 also requires any person who owns or controls a money transmitting business to register that business with the Secretary of the Treasury, through the Financial Crimes Enforcement Network (FinCEN). This registration requirement applies in addition to any State licenses that may be required. 31 U.S.C. § 5330(a)(3). Federal regulations require money transmitting businesses not in existence as of December 31, 2001 to register with FinCEN within 180 days after the date the business was

established. Such registration requires the name and location of the business and the name and address or each person who owns or controls the business, is a director or officer of the business, or otherwise participates in the conduct of the affairs of the business.

10. As defined in 31 U.S.C. § 5330(d)(l), a money transmitting business means any business other than the United States Postal Service which:

a. provides check cashing, ***currency exchange,*** **or** ***money transmitting or remittance services,*** or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in ***the transmission of funds,*** including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions systems;

b. is required to file reports under section 5313; and

c. is not a depository institution (as defined in section 5313(g)).

11. Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Section 1960 of Title 18, or any property traceable to such property, is subject to civil forfeiture.

12. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1960 is subject to civil forfeiture.

**FACTS GIVING RISE TO THE FORFEITURE**

13. Around September 2023, investigators discovered DTII and the Subject LLC were transmitting large sums of money from other countries into the United States.

14. DTII has held bank accounts in various banking institutions over the last several

years. Financial records obtained from various banks through legal process revealed that from April 2020 to August 2025, DTII held accounts at five different banks: 1) St. Louis Bank (April 2020-June 2020); 2) PNC Bank (July 2020-March 2021); 3) Enterprise Bank & Trust (September 2021- May 2024); 4) Central Bank (April 2024-October 2024) and 5) Royal Banks of Missouri (November 2024-August 2025).

15. Similarly, the Subject LLC has held multiple bank accounts and when the Subject LLC's bank accounts were closed, new bank accounts were opened. The Subject LLC was originally identified as a company in Singapore, but it was registered as a Delaware company in March 2024, a few months after its Singapore bank account was closed.

16. The Subject LLC received funds generated from foreign sources, received them into the above-captioned bank account and then distributed most of those funds to a handful of entities including to DTII. Between September 2021 and November 2023 the Subject LLC remitted $26.8 million dollars into DTII's bank accounts. Between March 2024 to April 2025, the Subject LLC remitted over $22 million to DTII. The bank records do not reflect the kind of business expenses (rent, payroll, etc) that the government expects to see in a corporate account, but rather reflects money received and money disbursed.

17. DTII's bank activity consisted largely of receiving funds and then disbursing them to other companies. DTII's bank records show that between April 2020 to August 2025, that company received approximately $57.5 million and remitted approximately $57.3 million. Further, a review of their accounts show DTII also had few apparent business expenses, such as utilities, rent, payroll, or service fees, and it appeared to exist solely to receive and disburse funds. Ultimately most of the funds coming into DTII (after being received from the Subject LLC) went to into a U.S.-based LLC's bank account and to overseas bank accounts in various foreign countries. Further, ultimately some of the funds went towards the acquisition of luxury

goods and services and millions of dollars were paid to the persons that created the Subject LLC and DTII. The Subject LLC is not licensed as a money transmitter in the state of Missouri or any other state. The Subject LLC is not registered with the Financial Crimes Enforcement Network (FinCEN).

18. The unusual flow of funds in and out of the Subject Account and the lack of a legitimate business purpose for the movement of funds demonstrates that the Subject Account was used for pass-through activity only and have violated Title 18, United States Code, Section 1960.

***<u>COUNT ONE – FORFEITURE</u>***

**18 U.S.C. § 981(a)(1)(A)**

19. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 18 above as if fully set forth herein.

20. The Subject Account was involved in an unlicensed money transmitting business because it was used to transfer funds without a license.

21. Based on the foregoing, the Subject Account is subject to forfeiture, pursuant to Title 18, United Stated Code, Sections 981(a)(1)(A) and 981(a)(1)(C) as property that constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1960.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that a Warrant for Arrest be issued in rem for the Subject Account and the Subject Account be condemned and forfeited to the United States of America, in accordance with the provisions of law; and that the United States of America be awarded its costs in this action, and have such other relief as provided by law and the nature of the case may require.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

*/s/ Ricardo Dixon*

RICARDO DIXON, #70026MO
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone: (314) 539-2200

# VERIFICATION

I, Caleb McDaniel, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Federal Bureau of Investigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/19/26

(date)

Caleb McDaniel
Special Agent
Federal Bureau of Investigation